22754, Cuono v. Tyco Fire Products. Thanks, Jeff. Thank you. Good morning, Your Honors. May it please the Court, I'm Marie Dussault with Finkelstein Partners Council for the Plaintiff Appellant Franklin Bono. The issue on appeal is a very narrow one. It's on statutory construction of a preemption provision in the Hazardous Material Transportation Act. It's respectfully asserted that the district court erred in finding that the HMTA preempted the plaintiff's common law claims against the defendant, Appellee Tyco Fire Products, with regard to its sale and supply of a test tank that had no markings, no information, no labeling, no warnings, and no information in any other form. In terms of the key issues, it seems like we shouldn't be in dispute. It's agreed, and it was agreed with the district court as well, that any type of preemption issue starts with an inquiry that looks straight at the language, the plain language of the statute. So can I ask, if we find that under 5125b1e your client's common law labeling claim is not preempted, do we need to reach all of your additional arguments about whether various sections of HMR apply to Tyco? I'm sorry, Your Honor? Is it enough if we find that section 5125b1e doesn't cover labeling? You made a bunch of different arguments about whether or not HMR applies to Tyco when they're talking about kitchens. Do we even need to mess with any of those? To the extent that, to consider the structure and purpose of the HMTA, if that provision is looked at as being ambiguous, and if it's considered that, if the fact that labeling, if it's accepted that labeling was not regulated, the labeling- No, no, no, I'm not, that's not what I'm, and I'm in this position because I felt like you got really messy with the argument in the reply room. So I'm asking for some help here. If we find that 5125b1e doesn't cover labeling, do we even need to get into the morass of whether or not the HMTA or HMR apply to Tyco when it is functioning as providing the container for a kitchen safety system? If it's accepted that labeling is not encompassed within marking. I turn to the HMR because it defines what Tyco's, how Tyco was regulated, and it defines what the word marking meant for a manufacturer, that how a manufacturer or someone who maintains- labeled, it just used the word marking. And another provision that has to deal with hazardous materials use both marking and labeling. So if we can affirm from the basis of statutory construction that because it is in one section but not in the other, that it means something different. And do we need to even mess with the other arguments you made about having to analyze the function that Tyco was performing and what the function that these canisters were performing?  It doesn't seem like it would apply, that there would be need for that if we're not considering, if we're not looking at the language as being, if the strict language is accepted as not including labeling being encompassed under marking, then we don't have to address what marking meant. And that, it was raised at length because the defendant in their responding brief claimed that labeling was encompassed under marking. Well, okay, so again, the fact that the same provision, one of them uses both label and marking, and the other one doesn't, you think that that's enough to decide on? If that's, if it's accepted that that's significant, yes. And I mean, in terms of also, I just bring up also the district court, without explanation said they found that this provision covered it. So therefore, it was a need to sort of address what was covered by that provision in terms of the regulations because certainly the preemption provision follows the regulations. Okay. Can you tell me what your best argument is that Amtrol doesn't answer this for us? It doesn't address it, Your Honor. It's the ruling that it came up with. First of all, that was not the issue presented. The issue was not whether labeling was encompassed under marking. The issue was whether, the issue, actually the ruling was simply that the federal preemption provision had been applied to the tank that had been marked with regard to the manufacture and marking of the container. It didn't, and it wasn't, the issue was not, the issue was whether an end user's activity is somehow dispositive on the question of preemption. And we are not claiming that it was the plaintiff's end use of it that's dispositive. Rather, it's what Tyco's responsibility was when they handled it, when they manufactured it, when they sold it as an empty tank to an end user. That brings them out of the purview of the HMTA because, except for the fact that this was a tank that was manufactured according to DOT specifications and marked accordingly, which serves to represent that it is so qualified to transport hazardous materials in commerce. Other than that, the HMTA and the HMR have no, they have no involvement. They have no, they don't regulate this matter. You know, it seemed like the argument was getting skewed throughout. Like the argument, our argument was not that a DOT specification tank is not subject to the HMT, HMR preemption provision so long as it's not being used to transport hazardous material in commerce. Our argument was that that preemption provision merely states, or the regulations merely states, so long as that representation is being made, that tank must be so qualified. And the rest of the provisions all deal with functions. And since Tyco has no involvement in the functions, it's simply the manufacturer regulations that apply, and they, as Your Honor noted, and the preemption provision, it does not relate to, labeling does not arise, it does not come up, it's not presented, and the preemption provision is not an all-encompassing one. There's no manifest and clear intention by Congress to have preemption apply to unregulated matters. Thank you, Counsel. You've reserved a couple minutes for rebuttal. Mr. Kirkpatrick. Good morning, Your Honors. James Kirkpatrick on behalf of Tyco Fire Products. May it please the Court. Congress enacted the Hazardous Materials Transportation Act to create uniformity in the transportation of hazardous materials. At the heart of that act is an express preemption provision that prevents manufacturers from having to juggle 50 different sets of state laws while they comply with federal requirements. There is no dispute that Tyco met all relevant federal requirements. Yet plaintiff seeks to impose additional common law state requirements on the cylinder. Today it's New York, but tomorrow it will be a plaintiff in New Jersey, then Pennsylvania, then Ohio. Such a patchwork of state and federal regulation is unacceptable under the plain text of the statute, which preempts any state requirement about the marking of a container marked as qualified for use in transporting hazardous materials in commerce. No, so, I mean, can you just pull up 5125, 49 U.S.C.A. 5125? Yes, Your Honor. What are we supposed to make of the fact that in B1B they use the word label and marking, and in B1E it's only marking? I mean... Your Honor, the word label has a very specific meaning in the hazardous materials industry. I read that in your brief. The reason why I am not persuaded as to that is because where the word label applies is on hazardous material. So your definition doesn't make any sense with respect to hazardous material if marking is the one that covers hazardous material. Marking is a synonym for labeling when it comes to hazardous material. Your Honor, for clarity, Tyco was not in a position to apply a label. Tyco did not fill this container with hazardous materials. No, you're right, which is why, 100%, which is why I think it's in E, which does not use the word label, which seems to me, and because this is such a big, specific, broad preemption, we need to think that maybe Congress didn't mean to cover, didn't mean to preempt state warning claims because it didn't use the word labeling here when it knows what the word labeling means, and it's not buying the definition of marking that you're putting forward because they use both labeling and marking when it comes to hazardous material. Well, Your Honor, Congress used the word marking and labeling in Part B of 5125 because when it comes to hazardous materials, there are labeling requirements. There's an entire HAZCOM standard within Part 172 of the hazardous materials regulations that provides the specific labels that have to go with particular hazardous materials. Markings, more broadly, refer to information that is included on cylinders regardless of the specific particular hazardous material. For example, for example, like, like. I'm sorry, Your Honor. Like, what information is imparted from a marking as opposed to a label? Well, for example, 225 is a marking on this container, and if you look to the record at pages 615 to 617, anybody who should have been handling this product, this is not a consumer product, but anyone in the industry would have known that that means the most air that you can put in this tank is 225 PSI. Marking is a limitation with regard to use. Marking is a limitation as to use, and the labeling is as to content? Your Honor, labels go with specific hazardous materials themselves. Markings, more generally, apply to other information. If you look, for example, at the plaintiff's sites to the empty packagings provision, which is 49 CFR 173.29, if you look at Part B of that, it uses, it says labels or other markings, and then it puts in parentheses inhalation hazard. That's a marking under that provision of the hazardous materials regulations, and if you look at the definition of markings within 171.8, it includes instructions, cautions. It just doesn't include labels that are specifically in the HAZMAT, you know, HAZCOM table included in Part 172 of the CFR. Okay, so I think that's your strongest argument, that a, that what they're calling a warning is a caution, and that's not there, but where do I look to confirm your very self-serving definition, and like, and the fact that Congress didn't use it here, and specifically made a distinction? Your Honor, at 171.8 of Title 40, or rather 49 CFR, that includes instructions and cautions. If you look to the Amtral adjudication, which appellant has conceded is entitled to Chevron deference if this court were to find ambiguity in the statute, they analyzed the proposed, quote, label or marking, and the specific label that they were looking at, if you look to footnote 6, is a risk against overfilling, overheating, and rusting. That's the specific warnings or label in the plaintiff's terms that wanted to be included on the cylinder in Amtral, and the DOT, in no uncertain terms, analyzing only 5125B1E, did not talk about 5125B1B, which has the word label in it, found that that was preempted. Right, but the materials were hazardous in that instance, right? So doesn't that imply that they were looking at B? I mean, that's the part that, I mean, I think this is a tricky case. So, I mean, what do we do about the fact that the materials in Amtral were actually hazardous and would have come under B when they were talking about it? I mean, are we in a position to just take the words when we're not looking at the facts that they were applying? Well, Your Honor, the only statute that was analyzed, the only provision of the statute is Part E. I think we can all assume that if the DOT wanted to find this preempted under 5125B1B, that they would have mentioned that provision. And in the footnotes, specifically, they define what types of markings that they're talking about. They say, as opposed to other types of markings, and they make clear they're talking about a marking here, not a label. And to Your Honor's point, again, Tyco would have actually been prohibited from applying a specific label under the hazardous materials regulations because they didn't fill the tank. But when it comes to putting a specific, any kind of information on the tank that's not tied to this specific hazardous material itself, that, Your Honor, is a marking. And if, as Your Honor said, what they wanted was a warning against the hazardous materials themselves, then their case would be preempted under 5125B1B because compressed air, compressed nitrogen, which is typically what goes in this tank, is a hazardous material. So they'd be preempted under Part B as opposed to Part E. Well, right, but we're not discussing B in this case. We're discussing E. I mean, I don't think, I'm not reading anybody as saying that there's a problem with preemption if we were in B land. But we're dealing with E land because it is a package, not a material. And so that's the part that I think how we can read them effectively the same when just two lines up Congress made a distinction between labeling and marking. Well, they're not the same because labels have a very specific meaning in the hazardous materials regulations. But, Your Honor, if you look to footnote 7 of Judge Halpern's opinion, he makes clear that this is even putting aside that presumably these claims would be preempted under 5125B1B. And starting at page 33 of our brief, we talk about how if what they really wanted was an HMR label, like go to Part 172, go to the HAZCOM table, we want that label, that they would be preempted under 5125B1B. The additional problem for them is that they got the wrong guy because Tyco is not the people that filled this tank. That was a third-party O'Brien. And so that's why we're sort of in 5125B1E. But I'll also call the Court's attention that the focus is not on who's filling the tank. The sole question under the statute is whether it is about the marking of a container or whether it's about the labeling or marking of hazardous materials. The question isn't who was in what part of the supply chain when the information was added to the tank. If they're saying they wanted a label and they're erroneously directing their claims towards Tyco, then they're preempted under Part B of the preemption statute. And, Your Honor, I'd also like to just correct, again, and I already sort of discussed this a little bit, but in the introduction, the appellant says that there were no markings, no labelings on this tank. And we think, first of all, that that's just incorrect. If you're using the term labeling in the HMR sense, when this left Tyco's possession, it didn't have one because it wasn't in the position to do that. But, again, if you look at the record at page 615, the numbers 225 appearing on the cylinder to any reasonable consumer of this product would have understood that to mean that you can't fill the tank more than 220 PSI. And this is consistent with how the Department of Transportation in 2020 went and tried to address the problems of overfilling by creating a marking requirement on, among other cylinders, four BW cylinders, exactly the type that are provided here. And because of that, there's simply no room. And Roth says this in the Third Circuit. They said there's very little, if any, room for state regulation of these cylinders. And to try to assume that now if label is not, it somehow has a generic term rather than something that's in the hazardous materials regulations, every single state could go out and say, here are the labels that you have to put on a hazardous material container, regardless of whether there are contents, regardless of whether it's empty. And that would completely turn this entire regulatory scheme on its head. That's exactly why Congress amended the Hazardous Materials Transportation Act in 1990 to strengthen the preemption provision, to say these are the domains of exclusive federal control over the transportation of hazardous materials. One of those in E is the marking of hazardous materials containers, which we think clearly subsumes the proposed instructions or warnings that they wanted on the tank. And the other is Part B of the Hazardous Materials Transportation Act, which says that you can't regulate the labeling of containers. If there are no further questions from your honors, I'll thank you. Thank you, counsel. Mr. Sullivan, you're preserved three minutes. Your Honor, the Amtral decision, it did involve a container that... Could you speak into the microphone? I'm sorry. Thank you. The Amtral decision, the DOT determination there, it did involve a container that was filled with hazardous materials that was transported in commerce. Therefore, there was parties involved. Therefore, the issues with regard to labeling, marking, anything, was encompassed in the HMTA. The argument there was because it happened to an end user, it shouldn't apply. So it's an entirely different issue, and it was simply, the ruling on it was federal hazardous material transportation law does not preempt tort claims that the packaging or packaging component failed to meet the design, manufacturing, or marking requirements in the HMR, or that a person who offered a hazardous material for transportation in commerce or transported a hazardous material in commerce failed to comply with applicable requirements in the HMR. It's not this expansive ruling on the HMR, the HMTA. It simply does not, it relates to the issue there with regard to the end users. That was the biggest problem there. The claimant there was claiming that because the end user was using it when it was no longer being transported in commerce, it therefore should not, the HMTA and HMR should not apply, which, you know, as the fact of the matter is, the people who are performing the functions have already performed their functions. So it did apply when this was going on. This is something that's made evident in the other DOT ruling that I cite in my papers when I talk about the issues of preemption and applicable provisions. They state that, they clarify that with regard to a tank car, I think it was a tank car packaging that was marked as being qualified to transport hazardous materials in commerce, had to stay that way. And it was that, because that was, that regulation applied to that, because a representation was made, the preemption provision, the manufacturing preemption provision applied. But if that tank car was being used in transporting hazardous materials in commerce and then at various times it was not being used in such a function, during those various times when it was not being used in such a function, the people handling it were not subject to the HMTA and to the corresponding preemption provisions. So the preemption provisions follows the regulated activity. Certainly B1, the provision, the 5125B1B has no application here because the container, Tyco did nothing to get the, they didn't do a pre-transportation function, nor did they do a transportation function with regard to this, any types of hazardous material in commerce. They merely had manufactured a DOT specification tank and then sold it empty to the end user to use as a test tool for their Kitchenite fire suppression systems. Meanwhile, the agent tank, even though, the agent tank in this case, which was subject to a variety of other provisions, there was information on it. They didn't rely just on the marking. They did provide information, instructions, warnings, suggestions to read the manual. In the manual they said about the agent tank, do not look at the gauge, do not use the gauge, do not rely on the gauge to determine if it's filling, and that's what happened in this case. So the basic instructions that were given with the agent tank were not given with the test tank. It came, there was nothing on it other than the markings, which do not, they were, well the photos show the comparison, and there was nothing in the manual. So there couldn't even be a warning, read manual before use label. If there's any, I believe that was, all right, I thank you for your answer. If there's any other questions, I'll rely on my brief. Thank you. Thank you, counsel. Thank you both. We'll take the case under advisement. The last case on the calendar for today is on submission, so I'll ask the court and the deputy to adjourn. Court is adjourned.